United States District Court
Southern District of Texas
**ENTERED**
April 28, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| YURIANA BRISENO BELMONTEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:15-CV-86 |
| | § | |
| TEXAS A&M UNIVERSITY-KINGSVILLE | § | |
| | § | |
| | § | |
| Defendant. | § | |

## ORDER

BE IT REMEMBERED that on April 27, 2017 the Court **GRANTED** Defendant's Motion for Summary Judgment, Dkt. No. 35, and **STRUCK AS MOOT** Defendant's Partial Motion to Dismiss Claims Related to Criminal Charge, Dkt. No. 23.

### I. Background[1]

This is an employment discrimination action brought by Plaintiff Yuriana Briseno Belmontes ("Belmontes") against Defendant Texas A&M University-Kingsville (the "University"), alleging employment discrimination claims in violation of Title VII, including discrimination on the basis of national origin, race, and sex, as well as retaliation and hostile work environment claims. *See* Dkt. No. 18, Pl.'s Amend. Orig. Compl. [hereinafter "Pl.'s Second Am. Comp."][2] Belmontes was hired by the University as an Executive Assistant to the Vice President for Intercollegiate Athletics and Campus recreation, Scott Gines ("Gines"), on October 7, 2013. On or about April 11, 2014, her employment with the University ended. Belmontes claims that while she was employed by the University and working for

---

[1] Undisputed facts in this section are taken from Plaintiff's live complaint, Dkt. No. 18, and Defendant's answer, Dkt. No. 22, unless otherwise noted.

[2] Belmontes first filed an Original Complaint against defendants Texas A&M University-Kingsville and Texas A&M University System on February 16, 2015. Dkt. No. 1. On April 8, 2016 Belmontes filed an Amended Complaint removing Texas A&M University System as a defendant. *See* Dkt. No. 6. Belmontes's live complaint is therefore in fact her second amended complaint.

Gines, she was discriminated against and harassed as a result of her status as a Hispanic woman of Mexican descent. *See* Pl.'s Second Am. Compl. Belmontes also claims the University retaliated against her by terminating her from her employment, and by triggering criminal charges against her. *See id.* The University denies that Gines, or any other University employee implicated by Belmontes in her pleadings, discriminated against or harassed her in violation of Title VII. *See* Dkt. No. 35. The University further claims that Belmontes voluntarily resigned her position after the University opened an investigation into her ongoing misuse of a University credit card, on the same day the University reported this misuse to the Texas A&M University-Kingsville Police Department. *See* Dkt. No. 35.

On September 22, 2016, the University filed a motion to dismiss Belmontes's discrimination and retaliation claims related to criminal charges brought against her by the Kleberg County Attorney's Office in 2015, claiming that Belmontes did not timely exhaust these claims, which in any case fail as a matter of law. Dkt. No. 23. Belmontes responded to this motion on October 13, 2016, Dkt. No. 25, and the University replied on October 19, 2016, Dkt. No. 27. On December 23, 2016, this case was reassigned to the undersigned. Dkt. No. 32. On January 16, 2017, the University filed a motion for summary judgment on all of Belmontes's claims. Dkt. No. 35. Belmontes responded to this motion on February 6, 2017, and in her response raised a number of objections to the University's summary judgment evidence. Dkt. No. 36. The University replied on February 21, 2017. Dkt. No. 38. Now before the Court, therefore, are the University's motion to dismiss and its motion for summary judgment.

**II. Legal Standard**

    **a. Summary Judgment**

"[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-

movant." *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment for the moving party.'" *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must view all evidence in the light most favorable to the nonmoving party. *Piazza's Seafood World*, 448 F.3d at 752; *Lockett v. Wal-Mart Stores, Inc.*, 337 F.Supp.2d 887, 891 (E.D. Tex. 2004). Factual controversies must be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 36 F.3d 1069, 1075 (5th Cir. 1994). "When assessing whether a dispute to any material fact exists, [courts] consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

"Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Celotex*, 477 U.S. at 325). The nonmovant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. The Court will not, "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (emphasis deleted) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Rather, the nonmovant must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment. *Piazza's Seafood World*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891; *see also* Fed. R. Civ. P. 56(e). The nonmovant's burden is not satisfied by "conclusory allegations,"

"unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations omitted).

### b. Title VII Claims

Title VII of the Civil Rights Act of 1964, codified in 42 U.S.C. §§ 2000e et seq., "creates statutory rights against invidious discrimination in employment and establishes a comprehensive scheme for the vindication of those rights." *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 457–58 (1975). Title VII prohibits employers from discharging or discriminating against their employees on the basis of their employees' race, sex, national origin, religion, or color (referred to here as "status discrimination"). 42 U.S.C. § 2000e-2(a). Title VII also provides that it is unlawful for employers to retaliate against employees who have opposed discrimination or who have participated in actions that are considered "protected activities" under the statute. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001). Courts have interpreted Title VII's protection against status discrimination to include protection against a hostile work environment created by status-based harassment, recognizing that the statute "should be accorded a liberal interpretation in order to effectuate the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of ethnic discrimination." *Rogers v. E.E.O.C.*, 454 F.2d 234, 238 (5th Cir. 1971).

"The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (quoting *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004)). "Intentional discrimination can be established through either direct or circumstantial evidence." *Alvarado*, 492 F.3d at 611. The Fifth Circuit has held that "direct evidence is defined as evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Seeram v. La. State Univ. Med. Ctr.-Shreveport*, 188 F.3d 314, 321 (5th Cir. 1999). Here, Belmontes does not argue that she has submitted direct evidence of discriminatory intent. *See, e.g., Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 993 (5th Cir. 2005).

Analysis of a Title VII claim based on circumstantial evidence follows a burden-shifting framework, which places the initial burden of production on the plaintiff to establish a prima facie case for each of her claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). If the plaintiff is able to meet her burden, then the burden of production shifts to the defendant, who must demonstrate a legitimate non-discriminatory reason for the alleged adverse employment action. *Id*. If the defendant provides a legitimate non-discriminatory reason for the action, then the burden of production shifts back to the plaintiff to demonstrate that this reason is a pretext for discrimination. *Id*.

When asserting a discrimination claim, the plaintiff can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). In retaliation claims the plaintiff cannot simply show that a retaliatory reason was a motivating factor for the adverse decision, because ultimately she "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013). Throughout the process of burden-shifting, the plaintiff bears "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Id*. at 253

III. Analysis

 a. **Discrimination Claims**

In order for her claims alleging discrimination on the basis of national origin, race, and sex to survive summary judgment, Belmontes must raise a genuine issue of material fact as to discrimination on each ground, by satisfying the burden-shifting test established in *McDonnell Douglas*. The first step in this test requires Belmontes to make out a prima facie case of discrimination, by providing evidence that she: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the

[University]; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside [her] protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

The University argues, *inter alia*, that Belmontes fails to establish this prima facie case because she has failed to demonstrate that she was terminated or suffered another adverse employment action. *See* Dkt. No. 35. Indeed the University asserts that "it is not entirely clear from Belmontes's pleadings what specific alleged adverse action she is raising in each cause of action." Dkt. No. 35 at 16. It is true that Belmontes's live complaint only gestures in broad strokes at the *McDonnell Douglas* standard. *See* Pl.'s Second Am. Compl. Meanwhile, her response to the University's instant motion fails to directly address her discrete discrimination claims. Dkt. No. 36. Yet Belmontes's complaint does reference her alleged termination from the University. Pl.'s Second Am. Compl. at ¶ 21. Specifically, Belmontes alleges that on April 11, 2014, "Mr. Gines retaliated against [her] and screamed at [her] and said 'you are terminated, do not come back until further notice.'" *Id.* If true, this allegation would be enough for Belmontes to show the University took an adverse action against her. *See McCoy*, 492 F.3d at 556 (noting that in the Fifth Circuit only "ultimate employment decisions" such as hiring, firing, promoting, and compensating are actionable as adverse employment actions as to Title VII discrimination claims.) Yet Belmontes's conclusory and uncorroborated claim regarding her termination does not support the conclusion that she was indeed terminated.

At this summary judgment stage, the Court must view evidence in the light most favorable to Belmontes, the non-movant. However "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003). Further, "self-serving statements" made in affidavits are "not sufficient to raise a genuine issue of material fact" in the face of "overwhelming evidence" to the contrary. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004); *see also BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996). The only evidence

Belmontes offers in support of her claim that she was terminated is her own deposition testimony, in which she states repeatedly that she was told by Gines she was "terminated." *See* Dkt. No. 36, Ex. 1. The University, by contrast, has submitted a wealth of material in support of its claim that Belmontes in fact resigned. The University asserts that Belmontes resigned on April 11, 2014, after she was informed of and placed on a paid suspension from her employment, pending investigation into her misuse of a University credit card. Dkt. No. 35 at 17. In support of this assertion, the University submits: the affidavit of Gines, who decided to suspend Belmontes; the affidavit of Phillip Brown, a witness to the April 11, 2014 meeting in which Gines informed Belmontes she was suspended; the affidavit of Leon Bazar, the University's HR Director; a copy of a memorandum on University letterhead addressed to Belmontes dated April 11, 2014 informing her that she was being placed on "an extended suspension with pay for up to 30 days," in order to allow the University to "investigate allegations regarding [her] potential misuse of state resources"; a copy of a memorandum on University letterhead addressed to Belmontes dated April 16, 2014 stating: "Per your verbal resignation received via telephone by the [University] Monday, April 14, 2014, your resignation is both accepted and effective April 15, 2014"; and a copy of Belmontes's application for unemployment benefits submitted to the Texas Workforce Commission in which Belmontes represents that she "quit" her employment at the University because she "was being reprimanded for misuse of a company purchase card." *See* Dkt. No. 35, Exs. A-C, F.

 Belmontes has objected to several statements made in affidavits submitted by the University in support of its motion for summary judgment. *See* Dkt. No. 36. Yet, without finding that these objections are meritorious, the Court finds that even without considering the University's proffered affidavits, the remainder of materials the University submits in support of summary judgment overwhelmingly support its contention that Belmontes resigned her position. In this context, Belmontes's own deposition statements are not sufficient to raise a question of material fact as to whether she suffered an adverse employment action. Accordingly, the Court finds

that Belmontes has failed to state a prima facie case of discrimination on the basis of national origin, race, or sex under Title VII.

### b. Retaliation Claim

To establish a prima facie case of unlawful retaliation under Title VII, Belmontes must show that (1) she participated in an activity protected by Title VII, (2) the University took an adverse employment action against her, and (3) a causal connection exists between Belmontes's protected activity and the University's adverse action. *McCoy*, 492 F.3d at 556-57. Prior to the Supreme Court's decision in *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53 (2006), the Fifth Circuit "held that only 'ultimate employment decisions' . . . satisf[ied] the 'adverse employment action' element of a prima facie case of retaliation" under Title VII. *Wheat v. Florida Parish Juvenile Justice Com'n*, 811 F.3d 702, 706 at n.1 (5th Cir. 2016) (citations omitted). *Burlington Northern*, however, expanded the types of challenged actions that can qualify as retaliatory, holding that an adverse action must merely be "materially adverse" to a plaintiff, which the Court defined as "harmful to the point that [such an action] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington Northern*, 548 U.S. at 57.) This is an objective test, which requires a legal inquiry into whether, in context, "a company's conduct well might dissuade a 'reasonable' worker from engaging in protected conduct." *Halliburton, Inc. v. Administrative Review Bd.*, 771 F.3d 254, 261 (5th Cir. 2014).

Belmontes claims that the University retaliated against her both when it terminated her employment from the University, and when it reported the misuse of a University credit card issued to her to the Texas A&M University-Kingsville Police Department. *See* Pl.'s Second Am. Compl. at ¶ 27; Dkt. No. 36 at 17-25. This Court has already found that Belmontes fails to identify a dispute of fact as to whether she resigned her employment with the University or was in fact terminated. Yet even assuming that Belmontes's departure from her employment or the University's decision to report her misuse of a University credit card could constitute an "adverse employment action" for the purposes of showing retaliation

under Title VII, the Court finds that Belmontes cannot, as she must, show a causal link between the University's conduct and her engagement in any protected activity.

"Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Nassar*, 133 S.Ct. at 2533 (2013). Here, Belmontes's allegations of retaliation point to actions taken by the University that precede in time any engagement, by Belmontes, in activities protected by Title VII. Namely, according to her own pleadings, Belmontes did not raise any claims of discrimination or harassment, officially or otherwise, until May 14, 2014.[3] Pl.'s Second Am. Compl. at ¶ 25. Yet her employment with the University and the University's disclosure of her misuse of a University credit card to campus police both occurred more than a month earlier, on April 11, 2014. Accordingly, the Court finds that Belmontes has failed to state a prima facie case of retaliation under Title VII.

### c. Harassment/ Hostile Work Environment Claim

To establish a hostile work environment claim based on sex discrimination, a plaintiff must establish that "(1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action." *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). Additionally, the Fifth Circuit requires that conduct must be "sufficiently severe or

---

[3] The Court notes that Belmontes does claim, in her live complaint, that she "contemplated reporting [her] comments to Human Resources" prior to April, 2014, but abandoned this idea based on her belief "that certain individuals with power and authority at the Texas A&M-Kingsville and Texas University system were corrupt." Pl.'s Second Am. Compl. at ¶ 19. In her response to the University's motion for summary judgment, Belmontes repeats her claim that "she expressed her interest to go to HR to complain about Mr. Gines [sic] treatment of her" prior to April, 2014, and seems to allege that the University's claims about her use of a University credit card were pretext for the University's intent to retaliate against Belmontes. *See* Dkt. No. 36 at 20. Yet Belmontes does not cite to any materials in the summary judgment record to substantiate these assertions, and her response does not attempt to make out a prima facie claim of retaliation under Title VII, rendering analysis as to pretext premature.

pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (citations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) are not enough." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988)). "Relevant factors are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Belmontes claims that she experienced sexual harassment while employed by the University consisting of "various forms of inappropriate comments" about her clothing from Gines, such as "I like your high heels" and "[your] outfit looks good on you"; requests from Gines to have dinner with Belmontes at his home; comments from Gines about when his wife would be out of town; inappropriate looks and staring from Gines; and one interaction during which Gines allegedly touched Belmontes's behind with his hand.[4] *See* Dkt. No. 36. The University argues that even if these allegations are true, which it does not admit, they are insufficient to meet the Fifth Circuit's high bar for establishing a hostile work environment. Dkt. No. 35 at 27.

Without assessing the credibility of Belmontes's allegations, the Court agrees that Belmontes cannot establish a hostile work environment claim. A reasonable person would not find stray comments about Belmontes's attire and veiled invitations from Gines "hostile and abusive." *See Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) ("To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that

---

[4] In her response to the University's motion to dismiss, Belmontes also alleges that various student athletes and other University employees participated in conduct that created a hostile work environment. *See* Dkt. No. 36. Yet the Court will not consider these claims here, as Belmontes did not include them in her live complaint. *See* Pl.'s Second Am. Compl.

the victim perceived it to be so.") (citations omitted). Additionally, while even "isolated incidents, if egregious, can alter the terms and conditions of employment," the physical interaction with Gines that Belmontes describes, although unwanted and undesirable, is not akin to the kind of isolated incidents courts within the Fifth Circuit have previously recognized as egregious. *Id.* at 435 (collecting cases). Accordingly, the Court finds that Belmontes cannot establish a hostile work environment claim.

Having found that each of Belmontes's claims fail as a matter of law, the Court grants the University's motion for summary judgment, Dkt. No. 35, and strikes as moot the University's motion to dismiss, Dkt. No. 23.

### IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Defendant's Motion for Summary Judgment, Dkt. No. 35;
- **STRIKES AS MOOT** Defendant's Partial Motion to Dismiss Claims Related to Criminal Charge, Dkt. No. 23; and
- **VACATES** all Court settings in this case.

A separate final judgment consistent with this order will follow.

SIGNED this 27th day of April, 2017.

_____
Hilda Tagle
Senior United States District Judge